IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DUANE LUNSFORD,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN SHELBIE SMITH,<br><br>Respondent. | CASE NO. 1:25-CV-00156-JRA<br><br>JUDGE JOHN R. ADAMS<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Petitioner Duane Lunsford, a prisoner in state custody, seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction under § 2254(a) and the matter was referred to me to prepare a Report and Recommendation. (Non-document entry of Jan. 10, 2025). Respondent Warden Shelbie Smith, as Warden of the Belmont Correctional Institution (hereinafter, the State), filed the Return of Writ with the state court record. (ECF #5). Mr. Lunsford did not submit a Traverse.

In his petition, Mr. Lunsford asserts two grounds for relief. As outlined below, I recommend the District Court **DISMISS** the petition as untimely or **DISMISS** the claims as procedurally defaulted. I also recommend the District Court **DENY** a certificate of appealability (COA) on all grounds.

## PROCEDURAL HISTORY

On June 28, 2021, a Cuyahoga County grand jury indicted Mr. Lunsford as follows:

- **Count 1**: Aggravated murder, in violation of Ohio Revised Code § 2903.01(A), with one-year and three-year firearm specifications per O.R.C. §§ 2941.141(A) and 2941.145(A), respectively;

- **Count 2**: Murder, in violation of O.R.C. § 2903.02(A), with one-year and three-year firearm specifications per O.R.C. §§ 2941.141(A) and 2941.145(A), respectively;

- **Count 3**: Murder, in violation of O.R.C. § 2903.02(B), with one-year and three-year firearm specifications per O.R.C. §§ 2941.141(A) and 2941.145(A), respectively;

- **Count 4**: Felonious assault, in violation of O.R.C. § 2903.11(A)(1), with one-year and three-year firearm specifications per O.R.C. §§ 2941.141(A) and 2941.145(A), respectively; and

- **Count 5**: Felonious assault, in violation of O.R.C. § 2903.11(A)(2), with one-year and three-year firearm specifications per O.R.C. §§ 2941.141(A) and 2941.145(A), respectively.

(ECF #5-1 at PageID 41-43). On July 1, 2021, Mr. Lunsford pled not guilty and was assigned counsel. (*Id.* at PageID 45).

On May 3, 2022, Mr. Lunsford's counsel moved to withdraw, indicating he had "developed a conflict in the instant matter in which continued representation would be a violation of counsel's ethical obligations." (*Id.* at PageID 47). The trial court denied the motion on May 18, 2022. (*Id.* at PageID 49). At that same hearing, Mr. Lunsford rejected a plea offer that was placed on the record. (*Id.*).

On August 23, 2022, Mr. Lunsford appeared in court, retracted his former plea of not guilty and, consistent with an agreement with the State, pled guilty to amended charges of:

- **Count 2**: Involuntary manslaughter, in violation of O.R.C. § 2903.04(A), with a three-year firearm specification per O.R.C. § 2941.145(A); and

- **Count 4**: Felonious assault, in violation of O.R.C. § 2903.11(A)(1), with one-year firearm specification per O.R.C. § 2941.141(A).

(*Id.* at PageID 50). The one-year firearm specification was deleted from Count 2, the three-year firearm specification was deleted from Count 4, and Counts 1, 3, and 5 were dismissed. (*Id.*).

According to the Court's Journal Entry:

> THE DEFENDANT WAS ADVISED OF THE AGGREGATE MINIMUM AND MAXIMUM PRISON TERMS ON EACH QUALIFYING OFFENSE.
>
> AS PART OF THIS PLEA AGREEMENT, THE PARTIES AGREE TO A RANGE OF 17-23 YEARS OF INCARCERATION.

(*Id.*).

On October 3, 2022, Mr. Lunsford appeared for sentencing and a day later, the trial court issued a Journal Entry announcing the sentence as follows:

> THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 18 YEAR(S).
> COUNT 2-11 YRS MIN-16.5 MAX ON BASE CHARGE + 3 YR FIREARM SPEC
> COUNT 4-4 YRS ON BASE CHARGE, THE 1YR FIREARM SPEC MERGES INTO THE 3 YR FIREARM SPEC IN COUNT 2
> COUNTS TO RUN CONCURRENT
> TOTAL TIME 18 YRS MIN-23.5 YRS MAX

(*Id.* at PageID 51). Then, on October 5, 2022, the trial court issued a *nunc pro tunc*[1] order as follows:

> NUNC PRO TUNC ENTRY AS OF AND FOR 10/03/2022.

* * *

---

[1] Under Ohio law,

> A *nunc pro tunc* order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth. It is used to record that which the trial court did, but which has not been recorded. It is an order issued now, which has the same legal force and effect as if it had been issued at an earlier time, when it ought to have been issued. Thus, the office of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time.

*State v. Greulich*, 572 N.E.2d 132, 134 (Ohio Ct. App. 1988). "A nunc pro tunc entry does not replace the original judgment entry; it relates back to the original entry." *State v. Jones*, 108 N.E.3d 737, 742 (Ohio Ct. App. 2018).

> THE COURT IMPOSES A PRISON SENTENCE AT THE LORAIN CORRECTIONAL INSTITUTION OF 18 YEAR(S).
> COUNT 2-11 YRS MIN-16.5 MAX ON BASE CHARGE + 3 YR FIREARM SPEC
> COUNT 4-4 YRS ON BASE CHARGE, THE 1YR FIREARM SPEC MERGES INTO THE 3 YR FIREARM SPEC IN COUNT 2
> *COUNTS TO RUN CONSECUTIVE*
> TOTAL TIME 18 YRS MIN-23.5 YRS MAX

(*Id.* at PageID 53).

Mr. Lunsford did not file a Notice of Appeal to the Ohio Court of Appeals, Eighth Appellate District, until September 28, 2023 (*id.* at PageID 55-57), making the filing late by about 10 months. So, Mr. Lunsford also filed a Motion for Leave to File Delayed Appeal that same day. (*Id.* at PageID 58-60). On October 16, 2023, the Eighth District denied Mr. Lunsford's request to pursue a delayed appeal. (*Id.* at PageID 61).

Over a year later, on October 22, 2024, Mr. Lunsford filed a Notice of Appeal with the Supreme Court of Ohio. (*Id.* at PageID 62-64).[2] Accompanying that was Mr. Lunsford's Motion for Leave to File Delayed Appeal. (*Id.* at PageID 65-70). On November 26, 2024, the Supreme Court of Ohio denied Mr. Lunsford's motion without substantive comment. (*Id.* at PageID 71).

He filed his petition with this Court on January 29, 2025. (ECF #1).

## FEDERAL HABEAS PETITION

In his petition before this Court, Mr. Lunsford raises two grounds for relief:

> **GROUND ONE:** Petitioners consecutive sentence for involuntary manslaughter, and felonious assault were allied therefore, consecutive sentences imposed for these offenses violated the prohibition against double jeopardy. Petitioners counsel fail to

---

[2] The Notice of Appeal included with the state court record bears three dates stamps: "received" on September 28, 2024; "received" on October 22, 2024; and "filed" on October 22, 2024. (ECF #5-1 at Page 62). An independent review of the Supreme Court of Ohio's docket shows that court having docketed the Notice of Appeal on October 22, 2024, *see* http://www.supremecourt.ohio.gov/clerk/ecms/#/caseinfo/2024/1489 (last accessed Oct. 19, 2026), so I use that as the date of actual filing.

> object to these allied offenses without determining whether the offense should be merged as allied offenses.
>
> **GROUND TWO:** Judgment and sentence violates Ohio Law Allied offenses of similar import, it is against state law to be punished twice for one offense that has one single animus.

(ECF #1 at PageID 5-7) (as written). The State responds that Mr. Lunsford's petition is untimely and that his claims are procedurally defaulted, not cognizable, and meritless. (ECF #5 at PageID 27-35). As noted above, Mr. Lunsford did not file a Traverse or otherwise respond to the State's arguments.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Lunsford's habeas petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" so AEDPA acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Habeas courts review the last-explained state-court judgment on the federal claim at issue. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991).

Under AEDPA, habeas relief cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable

determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

For the purposes of § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). It includes "the holdings, as opposed to dicta, of [Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A state court's decision is "contrary" to Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Id.* at 405. The word "contrary" means "diametrically different, opposite in character or nature, or mutually opposed." *Id.* A state court does not act contrary to Supreme Court precedent when the precedent of the Supreme Court is ambiguous or nonexistent. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court's decision involves an "unreasonable application" of Supreme Court precedent if (1) the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case or (2) the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not be applied or unreasonably refuses to extend that principle in a new context where it should apply. *Williams*, 529 U.S. at 407. A state-court decision must be "objectively unreasonable" to have unreasonably applied Supreme Court precedent which requires more than the decision being "erroneous" or "incorrect." *See id.* at 409-11. "It bears repeating that even a

strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Comity principles also require federal courts to defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982). Federal courts must accept a state court's interpretation of its statutes and rules of practice. *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

The standard is intended to be difficult to meet and reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (describing habeas as an "extraordinary remedy, reserved for only extreme malfunctions in the state criminal justice system and different in kind from providing relief on direct appeal") (cleaned up). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including the statute of limitations and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *See Daniels v. United States*, 532 U.S. 374, 381 (2001).

**Statute of Limitations**. AEDPA establishes a one-year statute of limitations applicable to applications for a writ of habeas corpus by a person in custody pursuant to the judgment of a state

court. 28 U.S.C. § 2244(d); *see also Duncan v. Walker*, 533 U.S. 167, 179 (2001) (noting that the one-year limitations period in § 2244(d)(1) meets the interest in the finality of state court judgments). The limitations period is not jurisdictional; rather, it is an affirmative defense the responding party must raise in its first responsive pleading. *Day v. McDonough*, 547 U.S. 198, 205 (2006); *see also Scott v. Collins*, 286 F.3d 923, 927-28 (6th Cir. 2002). Though not jurisdictional, when the State asserts the limitations period and the petition is late, the district court should dismiss the case. *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009); *see also McCray v. Vasbinder*, 499 F.3d 568, 577 (6th Cir. 2007) (reversing order granting habeas relief because the "gateway requirements" for excusing a time-barred petition—*i.e.*, equitable tolling and actual innocence—had not been satisfied).

AEDPA's statute of limitations period runs from the latest of four dates:

> (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's strict filing deadlines promote the finality of convictions and curb dilatory tactics. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). A state-court judgment becomes "final" on direct review for purposes of § 2244(d)(1)(A) when the time for pursuing direct review in state court or the United States Supreme Court expires. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled while a properly filed

application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim remains pending.

**Procedural Default**. Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

There are two avenues by which a petitioner's claim may be procedurally defaulted. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. To determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims, courts in the Sixth Circuit perform a four-pronged analysis: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Second, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the

time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims, barring federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or establish that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Wogenstahl v. Mitchell*,

668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

## ANALYSIS

The State asserts Mr. Lunsford's petition is time-barred, his claims are procedurally defaulted, and, in any event, the claims lack merit or are not cognizable on federal habeas review. I agree the petition is untimely and the claims are procedurally defaulted. As such, I do not address the merits of his claims.

### I. Mr. Lunsford's habeas petition is untimely and not saved by any tolling or equitable doctrine.

#### A. Mr. Lunsford's habeas petition was not timely filed in this Court.

As mentioned above, AEDPA establishes a one-year limitations period for filing a habeas petition. 28 U.S.C. § 2244(d). That period runs from the latest of four dates, the relevant one here being "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A). A state-court judgment becomes "final" on direct review for purposes of § 2244(d)(1)(A) when the time for pursuing direct review in state court or the United States Supreme Court expires. *Gonzalez*, 565 U.S. at 150.

Here, the trial court issued its sentencing judgment on October 4, 2022,[3] after which Mr. Lunsford had 30 days to pursue an appeal to the Eighth District. *See* Ohio App.R. 4(A). In other words, Mr. Lunsford had until November 3, 2022, to file his Notice of Appeal. He did not do so until September 28, 2023, making it late by approximately 329 days.[4] Although he requested

---

[3] The subsequent *nunc pro tunc* entry does not change the operative date. *See State v. Lester*, 958 N.E.2d 142, 149 (Ohio 2011) ("[A] nunc pro tunc judgment entry issued for the sole purpose of complying with Crim.R. 32(C) to correct a clerical omission in a final judgment entry is not a new final order from which a new appeal may be taken.").

[4] I note the Certificate of Service on the motion indicates it was sent to the county prosecutor on March 29, 2023. (ECF #5-1 at PageID 56). The motion also indicates the appeal

permission to pursue a delayed appeal, the Eighth District denied the request on October 16, 2023. Mr. Lunsford then had 45 days from that judgment to seek further review from the Supreme Court of Ohio. *See* Ohio S.Ct.Prac.R. 7.01(A)(1). That deadline was November 23, 2023.

Mr. Lunsford did not seek review from the Supreme Court of Ohio until October 22, 2024. This was 309 days after the applicable deadline expired, so he once again requested permission to pursue a delayed appeal. The Supreme Court of Ohio denied that request on November 26, 2024. He sought no further review of that decision, either by an appeal to the United States Supreme Court or a petition in Ohio state court for post-conviction review.

Under § 2244(d)(1)(A), Mr. Lunsford's conviction became final for purposes of pursuing federal habeas relief on November 3, 2022, that is, 30 days after the trial court's entry of judgment. His petition to this court, filed January 29, 2025, is approximately 800 days out of time.[5]

---

arises from a trial court judgment rendered on August 22, 2023 (*id.*), but a review of the trial court's docket does not show any entries on that date and confirms the Notice of Appeal was not filed until September 28, 2023:

| | | | | |
|---|---|---|---|---|
| 10/16/2023 | 10/16/2023 | N/A | JE | Appeal is dismissed pursuant to Motion No. 568197. Notice issued. |
| 10/12/2023 | 10/12/2023 | D1 | CL | RECORD ON APPEAL, PAGINATION SHEET AND CRIMINAL FILE SENT TO THE COURT OF APPEALS. |
| 09/28/2023 | 09/28/2023 | D1 | NT | NOTICE OF APPEAL, PREACIPE, AND DOCKETING STATEMENT SENT TO CUYAHOGA COUNTY PROSECUTORS. |
| 09/28/2023 | 09/28/2023 | D1 | NT | NOTICE OF APPEAL FILED BY APPELLANT PRO SE. CA 113220 |
| 12/06/2022 | 12/06/2022 | N/A | CS | COURT REPORTER FEE |
| 11/04/2022 | 11/04/2022 | N/A | OT | NOTICE OF CALCULATION OF SENTENCE |

*See* Case No. 660634, https://cpdocket.cp.cuyahogacounty.gov/Search.aspx (last accessed Oct. 19, 2026).

I also note the request for a delayed appeal was supported by Mr. Lunsford's Affidavit of Indigence. (ECF #5-1 at PageID 57). The notary's jurat on that affidavit states Mr. Lunsford swore to it on March 29, 2023. The record contains no explanation why Mr. Lunsford apparently waited six months after executing the affidavit to file the motion for delayed appeal.

[5] As discussed further below, this calculation is net of the 18 days Mr. Lunsford's application for a delayed appeal was pending before the Eighth District because that application does provide tolling of unexpired limitations periods.

**B. Statutory tolling does not save Mr. Lunsford's untimely petition.**

Under § 2244(d)(2), the one-year AEDPA limitations period is tolled while "a properly filed application for state post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending." The tolling provision only pauses the clock on a time period that has not yet fully run; it does not restart an already expired limitations period. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

Mr. Lunsford, however, did not properly pursue state post-conviction relief or other collateral review of the trial court's sentencing judgment. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000) ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings" including "the time limits upon its delivery."). Although his applications for delayed appeals to the Eighth District and the Supreme Court of Ohio toll any unexpired deadlines pursuant to § 2244(d)(2), they do not revive expired deadlines. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001) ("[A]lthough the filing of the motion for a delayed appeal may have tolled the running of the one-year statute, it did not cause the statute to begin running anew when the state court denied the motion.").

Here, the application for a delayed appeal to the Eighth District was pending for 18 days, so the AEDPA deadline gets extended from November 3 to November 21, 2023. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 748 (6th Cir. 2011) ("The limitations period remained tolled for several months while the Ohio Supreme Court considered and eventually denied Hall's motion for a delayed appeal."). The 2024 application for a delayed appeal to the Ohio Supreme Court does not come into play, because by that time, the AEDPA deadline had already passed.

Accordingly, statutory tolling does not save Mr. Lunsford's untimely petition, even after considering the effect of the applications for delayed appeals.

**C. Mr. Lunsford has not sought, nor is he entitled to, equitable tolling.**

AEDPA's statute of limitations is not "an inflexible rule requiring dismissal whenever its clock has run" and is "subject to equitable tolling." *Holland v. Florida*, 560 U.S. 631, 645-46, 649 (2010) (cleaned up). A habeas petitioner is entitled to equitable tolling upon showing (1) the petitioner has been pursuing the petitioner's rights diligently, and (2) some extraordinary circumstance stood in the petitioner's way and prevented timely filing. *Id.* at 649. "[P]etitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim, pursuant to 28 U.S.C. § 2244(d)(1)(D)." *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) (quotation omitted).

Mr. Lunsford has not affirmatively argued he is entitled to equitable tolling. But in addressing the timeliness of his petition, he states:

> The statute of limitations does not bar my petition due to the following reasons, there has been power outages, problems with the mail, my work has been deleted multiple times from the law library computer, getting computer time for the law library is sometimes not given, I have been to the whole a couple of time, I catch colds easy as well and the windows and fans are kept on most of the day almost all week causing me to become sick on multiple occasions. Since the first time of me sending my delayed appeal out which was some time in May it got to the clerk on May 21, 2024 and was sent back multiple times because I had an error in my documents that wouldn't allow my document to be filed in the supreme court on multiple try's, on 10/22/2024 my delayed supreme court appeal was filed after numerous try's. I am working to the best of my ability to be timely with my relief.

(ECF #1 at PageID 10) (as written). Case law shows such circumstances are insufficient to trigger equitable tolling.

For example, it is well-settled that a petitioner's limited access to legal materials does not warrant equitable tolling. *See Hall*, 662 F.3d at 750-51 (rejecting petitioner's argument that he was entitled to equitable tolling due to lack of access to transcripts, as well as his pro se status and limited law library access); *McMurray v. Smith*, No. 1:15-cv-75, 2015 WL 6618823, at *5-6 (W.D. Mich. Oct. 30, 2015) (finding petitioner placed in administrative segregation without access to legal materials or assistance was not entitled to equitable tolling); *United States v. Cherry*, No. 04-90040, 2010 WL 3958679, at *2 (E.D. Mich. Oct. 8, 2010) (citing cases holding that lack of access to personal legal materials during prison lockdowns, transfers, and administrative segregation are not extraordinary circumstances to warrant tolling); *Grayson v. Grayson*, 185 F.Supp.2d 747, 751 (E.D. Mich. 2002) (denial of access to legal materials is not an exceptional circumstance warranting equitable tolling).

Similarly, although several courts of appeal have concluded a petitioner's mental or physical incapacity may justify equitable tolling, the petitioner's incapacity must be tied to the delay in seeking relief. *See, e.g.*, *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010) ("[Petitioner] must offer a 'particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights.'") (citation omitted)); *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) ("[T]he alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition."); *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003) ("Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled."); *see also Gray v. Potter*, 115 F.App'x 891, 894 (7th Cir. 2004) ("A plaintiff whose mental or physical impairment prevents him

or her from complying with the statute of limitations may invoke equitable tolling.") (citation omitted).

But even then, the habeas petitioner must demonstrate "these health problems rendered him unable to pursue his rights during the one-year time period." *Rhodes v. Senkowski*, 82 F.Supp.2d 160, 173 (S.D.N.Y. 2000); *see also Moody v. Bayliner Marine Corp.*, 664 F.Supp. 232, 237 (E.D.N.C. 1987) (equitable tolling available only when plaintiff is so incapacitated that he was "incapable of filing any claim within the requisite time periods"). Here, Mr. Lunsford offers no specifics as to any claimed incapacity: what was the diagnosis (other than "I catch colds easy"); how and during what time periods did his illness preclude him from timely drafting his habeas petition; how difficult was it to access the law library computer and why that hampered timely preparation of the habeas petition; or the like.

Finally, Mr. Lunsford might be heard to argue equitable tolling should apply because trial counsel did not inform him of both his right to an appeal and the availability of appointed counsel if he could not afford one. (ECF #5-1 at PageID 59). In *DiCenzi*, the Sixth Circuit recognized that an otherwise untimely federal habeas corpus petition may be timely when a defendant is not advised of his right to appeal. 452 F.3d at 469. "In such a scenario, the statute of limitations begins to run under 28 U.S.C. § 2244(d)(1)(D), on a claim that the state appellate court improperly denied a motion for delayed appeal, on the date that the state appellate court denied the motion for delayed appeal." *Monroe v. Jackson*, No. 2:08-cv-1168, 2009 WL 466379, at *1 (S.D. Ohio Feb. 23, 2009) (citing *DiCenzi*, 452 F.3d at 469). But even with such tolling, his petition is still untimely.

Here, the Eighth District denied Mr. Lunsford's motion for an untimely appeal on October 16, 2023, so if he were entitled to equitable tolling and the one-year limitation period started then, he had until October 16, 2024, to file his habeas petition. But again, Mr. Lunsford did not file his habeas petition until January 29, 2025, still well outside the one-year period.

Additionally, Mr. Lunsford has not attempted to establish a basis to conclude he exercised due diligence after discovering the factual predicate for his habeas claims. None of his state court filings indicate when he learned of his right to appeal (even assuming he is correct in asserting his trial counsel did not explain this to him). Lack of actual notice, and "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse [late] filing." *Fisher v. Johnson*, 174 F.3d 710, 714–15 (5th Cir. 1999); *see also United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999); *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991).

For these reasons, I conclude equitable tolling should not apply to Mr. Lunsford's untimely petition.

### D. Mr. Lunsford does not claim the statute of limitations should be overlooked under the actual innocence exception.

As stated above, Mr. Lunsford may overcome the statute of limitations by showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 495-96. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. To be credible, a petitioner must support his allegations of constitutional error "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. A court must find that petitioner proved "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

Mr. Lunsford does not offer any new, reliable evidence not presented at trial establishing his innocence. As a result, he cannot avoid the procedural default by relying on this exception.

Because Mr. Lunsford's petition was filed after AEDPA's limitations period expired and no tolling or equitable exception applies, I recommend the District Court **DISMISS** the petition as untimely.

## II. Mr. Lunsford's habeas claims are procedurally defaulted.

Even if Mr. Lunsford had filed his petition on time, the two grounds for relief he raises are procedurally defaulted because they were never reviewed on the merits in the state courts after he failed to comply with a state procedural rule that is an adequate and independent state-law ground on which the state can foreclose review of federal constitutional claims and the state court enforced that procedural rule. *Maupin*, 785 F.2d at 138; *see Williams*, 460 F.3d at 806 (procedural default occurs if a petitioner does not comply with state procedural rules in presenting his claim to the appropriate state courts).

As discussed above, courts use a four-pronged analysis to determine whether a petitioner's failure to comply with a state procedural rule bars review of his habeas claims: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. Each of these prongs support a finding that Mr. Lunsford procedurally defaulted his habeas claims.

In Ohio, an appellant has 30 days after the trial court's entry of judgment to file a Notice of Appeal. Ohio App.R. 4(A). An appellant who misses that deadline may seek leave to file a delayed appeal under App.R. 5(A). Under that rule, the appellate court will grant a delayed appeal only if the appellant "demonstrate[s] cause for both the delay itself, and the length of the delay." *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011). In this case, Mr. Lunsford did not file a Notice of Appeal to the Eighth District until September 28, 2023 (*id.* at PageID 55-57), making the filing late by about 10 months. So, Mr. Lunsford also filed a Motion for Leave to File Delayed Appeal. (*Id.* at PageID 58-60). The Eighth District denied his motion for leave. (*Id.* at PageID 61). Thus, Ohio has a procedural rule that Mr. Lunsford did not follow and the state enforced that procedural rule by denying his motion for leave, satisfying the first and second prongs. The Sixth Circuit has determined that "a petitioner's failure to follow [App. R.] 5(A) can serve as the basis for a procedural default of a petitioner's habeas claims." *Stone*, 644 F.3d at 348. This satisfies the third prong.

For the fourth prong of cause and prejudice to overcome procedural default, Mr. Lunsford makes no specific arguments. In his motion for leave to the Eighth District, Mr. Lunsford claimed he did not file a timely appeal because he was not informed that he had a right to appeal. (ECF #5-1 at PageID 59). A petitioner's lack of knowledge about his right to appeal may establish cause to overlook procedural default if the petitioner shows he was not otherwise aware of the right to appeal and did not delay in filing a notice and motion for leave to file a delayed appeal after learning of the right to do so. *See Feely v. Warden, Chillicothe Corr. Inst.*, No. 2:16-cv-619, 2018 WL 1905644, at *1 n.2 (S.D. Ohio Apr. 23, 2018) (petitioner did not establish cause to excuse procedural default when three months lapsed between the time petitioner learned he could appeal

and the time he filed a motion for leave to file a delayed appeal); *Whitson v. Clipper*, No. 1:14-cv-2718, 2015 WL 3905104, at *3 (N.D. Ohio June 25, 2015) (petitioner failed to establish cause for procedural default where he waited approximately three years from the date of judgment to seek a delayed appeal; even if the court's failure to inform the defendant of the right to appeal constitutes cause, petitioner waited another seven months after learning about his right to appeal to file a motion for a delayed appeal); *Medina v. Bracy*, No. 1:17-cv-1884, 2021 WL 925806, at *5-6 (N.D. Ohio Mar. 11, 2021) (holding petitioner, who moved for leave to file a delayed appeal 1.5 years after being sentenced, did not establish cause because he failed to provide any information regarding when he discovered he had the right to appeal).

Here, Mr. Lunsford filed a motion for a delayed appeal about 10 months after the deadline passed but did not provide any information about when he discovered his right to appeal. Without that information, Mr. Lunsford has not shown he promptly moved to file an appeal after discovering that he had the right to do so. The bare assertion that he was unaware of his appellate rights without more information as to when he became aware of them is insufficient to establish cause for the extensive period after his conviction in which he did not file an appeal. Thus, he has not satisfied his burden to demonstrate cause for his procedural default.

The four *Maupin* prongs indicate Mr. Lunsford has procedurally defaulted his two grounds for relief. Thus, if the District Court were to find the petition timely, I recommend the District Court **DISMISS** the claims as procedurally defaulted.

## Certificate of Appealability

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C.

§ 2253(c). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a district court has determined a petitioner's constitutional claim to lack merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* A showing that the appeal would succeed on the claim is not needed to grant a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Mr. Lunsford has not made a substantial showing that he was denied any federal constitutional right. Jurists of reason would not find it debatable whether his petition was timely or the grounds for relief are procedurally defaulted. I thus recommend the District Court **DENY** Mr. Lunsford a COA.

## Conclusion and Recommendation

For these reasons, I recommend the District Court **DISMISS** the petition as untimely or **DISMISS** the claims as procedurally defaulted. I also recommend the District Court **DENY** a certificate of appealability (COA) on all grounds.

Dated: October 20, 2026



DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).